UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Leona Ruth Heeter, | ) | Civil Action No.  5:19-2679-KDW |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| Andrew Saul, | ) | ORDER |
| Commissioner of Social Security, | ) | |
| Defendant. | ) | |

This social security matter is before the court pursuant to 28 U.S.C. § 636(c) and Local Civil
Rule 83.VII.02 (D.S.C.) for final adjudication, with the consent of the parties, of Plaintiff's petition
for judicial review. Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial
review of a final decision the Commissioner of Social Security ("Commissioner"), denying her claim
for Disability Insurance Benefits ("DIB") pursuant to the Social Security Act ("the Act"). Having
carefully considered the parties' submissions and the applicable law, the court affirms the
Commissioner's decision, as discussed herein.

I.      Relevant Background

        A.      Procedural History

On February 28, 2012,[1] Plaintiff protectively filed for DIB under Title II of the Act, 42 U.S.C.
§§ 401-433, alleging she became disabled on June 1, 2009. Tr. 128-29. After being denied initially,
Tr. 50-60, and on reconsideration, Tr. 62-73, Plaintiff requested a hearing before an Administrative
Law Judge ("ALJ"), Tr. 85-86. ALJ Ronald Sweeda conducted a hearing on October 23, 2013, taking
testimony from Plaintiff and Vocational Expert ("VE") Tonetta Watson-Coleman. Tr. 32-49. The
ALJ denied Plaintiff's claim in a decision dated November 20, 2013. Tr. 17-27. Plaintiff requested

---

[1] Although the application was completed on May 29, 2012, Plaintiff's protective filing date is
February 28, 2012, as indicated in the Disability Determination and Transmittal. Tr. 60.

review of this decision from the Appeals Council, Tr. 16. The Appeals Council denied her request on February 18, 2015. Tr. 1-4.

After the Appeals Council denied her request for review, in a Complaint filed April 23, 2015, Plaintiff appealed the unfavorable decision to the United States District Court for the District of South Carolina. Tr. 359-60. Plaintiff alleged the ALJ erred in his residual functional capacity ("RFC") findings, failed to give proper weight to the opinion of her treating physician, erred in finding Plaintiff capable of performing her past relevant work ("PRW"), failed to comply with Social Security Ruling ("SSR") 82-62 in assessing her PRW, did not comply with SSR 00-4p regarding the VE's testimony, and failed to carry the burden of proof regarding jobs Plaintiff could perform. Tr. 383. The District Court filed an Order on August 18, 2016 reversing the Commissioner's decision and remanding the case for "further administrative consideration of Dr. Burger's opinions, Plaintiff's residual functional capacity, and whether Plaintiff can perform her past relevant work." Tr. 386. Based on the court's Order, on September 25, 2016, the Appeals Council vacated the final decision of the Commissioner and remanded the matter "for further proceedings consistent with the order of the court." Tr. 390.

ALJ Sweeda conducted a second administrative hearing on February 24, 2017, taking testimony from Plaintiff and VE Carroll Crawford. Tr. 302-18. On May 25, 2017, the ALJ issued another unfavorable decision denying Plaintiff's claim. Tr. 394-405. Plaintiff filed written exceptions to the ALJ's decision on July 24, 2017. Tr. 535-38. Plaintiff argued that despite the findings of error by the district court "the ALJ's second decision essentially makes identical findings with regard to the assessment of Dr. Burger's treating source medical opinion." Tr. 536. Plaintiff took exception to the ALJ's finding that she was capable of performing her PRW and took exception to the ALJ's failure to consider all relevant evidence in the record. Tr. 537. On June 7, 2018, the Appeals Council again

remanded the case to an ALJ for resolution and directed the case be assigned to a different ALJ. Tr. 414-16.

On November 29, 2018, Plaintiff's third administrative hearing was held before ALJ Edward T. Morriss. Tr. 319-36. ALJ Morriss issued his unfavorable decision on March 8, 2019, finding that Plaintiff was not disabled from her alleged onset date through her date last insured of December 31, 2014. Tr. 283-95. Plaintiff again filed written exceptions to the ALJ's decision on June 19, 2019. Tr. 274-79. On July 22, 2019, the Appeals Council found no basis to change the ALJ's decision; accordingly, the ALJ's March 8, 2019 decision became the final decision after remand. Tr. 267-69. Plaintiff brought this action seeking judicial review of the Commissioner's decision in a Complaint filed on September 23, 2019.[2] ECF No. 1.

B.     Plaintiff's Background

Born in July 1957, Plaintiff was 51 years old on her alleged onset date of June 1, 2009. Tr. 152. Plaintiff completed high school and her PRW included restaurant cook, rest home kitchen worker, and thrift store product sorter. Tr. 156. In applying for DIB, Plaintiff listed the following conditions that limit her ability to work: spinal stenosis, fibromyalgia, and osteoarthritis. Tr. 155. Plaintiff indicated she stopped working on June 1, 2009 because of these conditions. *Id.*

In a Disability Report-Appeal dated October 3, 2012, Plaintiff described changes in her daily activities. Tr. 188. Plaintiff indicated that pain in her lower back, legs, and arms affected everything she did throughout the day, and she could no longer care for her grandson by herself. *Id.*

C.     Administrative Proceedings

---

[2] Pursuant to the regulations, "when a case is remanded by a Federal court for further consideration, the decision of the administrative law judge will become the final decision of the Commissioner after remand on your case unless the Appeals Council assumes jurisdiction of the case." 20 C.F.R. § 404.984(a). Here, the Appeals Council did not assume jurisdiction. Tr. 267.

1. 2017 Hearing

Based on the Order of the District Court, the Appeals Council vacated the ALJ's November 20, 2013 unfavorable decision and remanded the case. ALJ Sweeda conducted a second administrative hearing on February 24, 2017. Tr. 302-18. Plaintiff appeared with counsel; VE Carroll Crawford also appeared and testified. Tr. 302.

a. Plaintiff's Testimony

In response to questions from the ALJ Plaintiff confirmed that she was 59 years old, 5'6" tall, weighed 220 pounds, and was separated from her husband. Tr. 306. Plaintiff confirmed that she had never obtained a driver's license, she had a high school education, and she could read and write. *Id.* Plaintiff confirmed her prior testimony that she had not worked since her alleged onset date, but she took care of her infant grandson until he became mobile. *Id.* Plaintiff confirmed that she previously worked as a store clerk but stopped because of leg and back pain. Tr. 307. Plaintiff confirmed her prior testimony that she was unable to work due to overall pain from fibromyalgia and low back pain from degeneration, and that her low back pain was relieved somewhat by sitting. *Id.* Plaintiff testified that she takes Advil, Tylenol, or Aleve for her pain and continues to see Dr. Burger[3] on an "as needed" basis. *Id.* Plaintiff testified that she does not have a problem with her blood pressure, and she checks her blood sugar numbers twice a day and the numbers range from 120 to 140. Tr. 307-08. Plaintiff stated that she takes Metformin and Glipizide for her diabetes and she has no side effects. Tr. 308. Plaintiff stated that she can sit for a half hour, and her ability to stand and walk for 10 minutes each is still that same as indicated at the last hearing. Tr. 308. Plaintiff confirmed that no doctor has given her a specific lifting limit and she still has no problems using her hands. Tr. 309. Plaintiff confirmed

_____

[3] Although the hearing transcript spells the doctor's name as "Berger" records indicate the correct spelling is "Burger." *See* Tr. 713.

4

that she still lived in a house with her daughter, son-in-law, and their three children. *Id.* Plaintiff

confirmed that she can attend to her personal hygiene but sometimes needed to sit in the shower. *Id.*

She stated that she can do most household tasks at her own pace, but she is unable to sweep or do

laundry. *Id.* Plaintiff confirmed that during the day she does some housework off and on, she reads a

lot, and watches a little television. Tr. 309-10. Plaintiff testified that her grandchildren are 18, 11, and

10 years old. Tr. 310.

In response to questions from her attorney Plaintiff confirmed that in June 2007 her doctor

reduced her work hours at a restaurant job in Pennsylvania because she was no longer able to do the

work. Tr. 310. Plaintiff testified that she tried to do the same job at a different location—thinking that

the way the job was performed might be different—but she was still unable to do the work. Tr. 311.

Plaintiff stated that she moved to the Charleston area in 2007. *Id.* She testified that she lost her

insurance in 2008, the year after her husband retired and she could no longer afford to pay for it under

COBRA. *Id.* Plaintiff testified that she would not be able to do any of the jobs that she performed

during her past relevant work period. Tr. 311-12.

b.  VE's Testimony

VE Crawford also testified at the hearing. Tr. 312. Plaintiff clarified that her past work history

included working in a thrift store sorting donations and getting them ready to be put on the sales floor.

*Id.* The VE identified that job as sales attendant, light, unskilled, SVP[4] of 2, and Dictionary of

Occupational Titles ("DOT") #299.667-010. Tr. 312. Plaintiff clarified that her kitchen work was in

---

[4] Specific Vocational Preparation or SVP is defined as the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation. An SVP level 5 is defined as over 6 months up to and including 1 year, an SVP of 4 is over 3 months up to and including 6 months, an SVP of 3 is over 1 month up to and including 3 months, and an SVP of 2 is defined as anything beyond short demonstration up to and including 1 month. *See* Dictionary of Occupational Titles ("DOT"), App. C, 1991 WL 688702.

a family-owned restaurant where she was one of three line cooks, and she also did all the prep work. Tr. 313. The VE described this as short-order cook, light exertion, with an SVP of 3, DOT #313.374-014 and the kitchen helper would be unskilled, medium, SVP of 2, and DOT #318.687-010. *Id.*

The ALJ asked the VE to assume a person of the claimant's age, education, and work experience with the RFC to perform light work with occasional climbing, crawling, stooping, crouching, and kneeling. Tr. 314. The ALJ asked if those limitations "allow the performance of both the floor associate and short order cook" and the VE responded that it would. *Id.* The VE stated that there would be no skills transferable to a sedentary level. *Id.*

In response to questions from Plaintiff's counsel, the VE testified that although Plaintiff reported lifting a maximum of 10 pounds, his finding that her PRW was at the light exertion level was "due to the standing." Tr. 314. Counsel asked if the past jobs could be performed "if due to symptoms of pain or any other reason the individual had to take with some regularity breaks on an unscheduled, unpredictable basis[.]" *Id.* The VE testified in the negative, noting that "breaks are limited to say two hours of work and one 15-minute break, then two hours, a meal break, another two hours and a 15-minute break is all that's usually allowed." Tr. 315.

2. 2018 Hearing

After ALJ Sweeda issued another unfavorable decision, the Appeals Council again remanded the case and directed the case be assigned to a different ALJ. Tr. 414-16. On November 29, 2018, Plaintiff's third administrative hearing was held before ALJ Morriss, and Plaintiff appeared with counsel and testified. Tr. 319-36.

In response to questions from the ALJ Plaintiff confirmed that she was 61 years old and a high school graduate. Tr. 322.

6

In response to questions from her attorney Plaintiff confirmed that, as testified to at her prior hearings, in her last job she worked part-time in a thrift store as a floor associate, sometimes called a product sorter. Tr. 323-24. Plaintiff confirmed that in the past she also worked as a dietary aide doing food prep, as a restaurant cook, and off and on as a waitress. Tr. 324-25. Plaintiff confirmed that these jobs required her to stand throughout the day, and the jobs also involved walking. Tr. 325. Plaintiff testified that she stopped working in June 2009 because with the pain in her lower back and numbness in her legs it "just got to be too much" and she "couldn't take it anymore." *Id.* Plaintiff confirmed that she previously lived in Pennsylvania, and at the time of her second hearing she submitted medical records that were unavailable at the first hearing that indicated in 2006 and early 2007 she was evaluated for back problems. Tr. 325-26. Plaintiff noted that at that time she was covered by insurance and was being treated by her primary care physician, Dr. Rebecca Lashbrook, who also referred her to other doctors. Tr. 326. Counsel noted a September 2006 medical record that indicated Plaintiff had developed numbness in her legs and she reported burning and tingling pain. Plaintiff confirmed that her condition has remained the same since that time. *Id.* Plaintiff also confirmed that the doctor sent her out for tests, including an MRI, and Plaintiff was told that she had stenosis. Tr. 326-27. Plaintiff testified that when she had insurance she was treated with physical therapy, injections in her back, and water therapy. Tr. 327. Plaintiff testified that none of the jobs she performed previously could be performed sitting down and she was not allowed to stand or sit at her discretion. *Id.*

Plaintiff confirmed that she moved to South Carolina, and the only doctor she has seen in the last five or six years has been Dr. Burger. Tr. 327-28. Plaintiff indicated that she does not have insurance. Tr. 328. Plaintiff confirmed that when she saw Dr. Burger, he performed tests on her and it was determined she had spinal stenosis. *Id.* Plaintiff indicated that since that time her condition has

not improved. *Id.* Plaintiff confirmed that her difficulties with performing certain activities, such as standing and lifting, have remained the same and her daily activities have remained the same. *Id.*

In response to questions from the ALJ Plaintiff confirmed that she lost her insurance coverage in 2008 and the thrift store where she worked did not provide insurance. Tr. 330-31. Plaintiff confirmed that she last saw Dr. Lashbrook in June 2007, and she worked two years after that until she stopped working at the thrift store in June 2009. Tr. 331. Plaintiff testified that Dr. Lashbrook referred her to a surgeon who examined her and sent her to water therapy, but the surgeon did not recommend surgery. Tr. 331-32. Plaintiff confirmed that she was treated by Dr. Burger when she moved to South Carolina and she continued to have symptoms from her back condition. Tr. 332. The ALJ noted that "from Exhibit 3F[5], there were no musculoskeletal abnormalities noted from July 2008 to December 2011." Tr. 332. The ALJ further noted that in 2013 Dr. Burger indicated positive straight leg raise test and bowstring left and right, but from April 2014 through November 2016 there were no musculoskeletal findings. Tr. 333. Plaintiff explained that she still complained of back pain to the doctor during that period, but because she did not have insurance "[t]here was only so much he could do." *Id.* Plaintiff confirmed that because she did not have insurance and could not afford it, Dr. Burger only prescribed medication and did not prescribe any other kinds of therapy or injections. Tr. 334.

In response to questions from her attorney Plaintiff clarified that she had been referred to a pain management facility, Meadville Medical Center, and received injections, but the injections did not help much. Tr. 334. Plaintiff stated that eventually she was notified that "there wasn't any other treatment available." Tr. 335. Plaintiff testified that she did talk with Dr. Burger about her back problems and he wanted her to be seen by a neurologist, but she had no way to pay for it. *Id.* Plaintiff

---

[5] Exhibit 3F contains medical treatment notes and test results from Dr. Burger of Dorchester Medical Associates. Tr. 221-37.

confirmed that her problems have continued since her initial diagnosis of spinal stenosis and lumbar

spondylosis in 2006-2007, and her problems have not gone away. *Id.*

II.    Discussion

A.    The ALJ's Findings

In his March 8, 2019 decision, ALJ Morriss made the following findings of fact and

conclusions of law:

> 1.    The claimant last met the insured status requirements of the
> Social Security Act on December 31, 2014.
>
> 2.    The claimant did not engage in substantial gainful activity
> during the period from her alleged onset date of June 1, 2009 through
> her date last insured of December 31, 2014 (20 CFR 404.1571 *et seq.*).
>
> 3.    Through the date last insured, the claimant had the following
> severe impairments: obesity and degenerative disc disease (20 CFR
> 404.1520(c)).
>
> 4.    Through the date last insured, the claimant did not have an
> impairment or combination of impairments that met or medically
> equaled the severity of one of the listed impairments in 20 CFR Part
> 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and
> 404.1526).
>
> 5.    After careful consideration of the entire record, I find that,
> through the date last insured, the claimant had the residual functional
> capacity to perform light work as defined in 20 CFR 404.1567(b).
> Specifically, the claimant is able to lift and carry up to 20 pounds
> occasionally and 10 pounds frequently and stand, walk, and sit for 6
> hours in an 8-hour day. She can frequently climb ramps and stairs and
> balance, stoop, kneel, crouch, and crawl, and can occasionally climb
> ladders, ropes, or scaffolds.
>
> 6.    Through the date last insured, the claimant was capable of
> performing past relevant work as a product sorter. This work did not
> require the performance of work-related activities precluded by the
> claimant's residual functional capacity (20 CFR 404.1565).
>
> 7.    The claimant was not under a disability, as defined in the Social
> Security Act, at any time from June 1, 2009, the alleged onset date,

through December 31, 2014, the date last insured (20 CFR
404.1520(f)).

Tr. 288-90, 294-95.

B.    Legal Framework

1.    The Commissioner's Determination-of-Disability Process

The Act provides that disability benefits shall be available to those persons insured for

benefits, who are not of retirement age, who properly apply, and who are "under a disability," defined

as:

> inability to engage in any substantial gainful activity by reason of any medically
> determinable physical or mental impairment which can be expected to result in death
> or which has lasted or can be expected to last for a continuous period of not less than
> 12 months[.]

42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated

under the Act have reduced the statutory definition of disability to a series of five sequential questions.

*See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting "need

for efficiency" in considering disability claims). An examiner must consider the following:  (1)

whether the claimant is working; (2) whether the claimant has a severe impairment; (3) whether that

impairment meets or equals an impairment included in the Listings;[6] (4) whether such impairment

---

[6] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed
impairments") the Agency considers disabling without the need to assess whether there are any jobs
a claimant could do. The Agency considers the listed impairments, found at 20 C.F.R. Part 404,
Subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the
medical evidence shows a claimant meets or equals all criteria of any of the listed impairments for at
least one year, he will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii).
To meet or equal one of these Listings, the claimant must establish that his impairments match several
specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526;
*Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting
the burden is on claimant to establish his impairment is disabling at Step 3).

prevents claimant from performing PRW; and (5) whether the impairment prevents the claimant from performing specific jobs that exist in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if she can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. Subpart P, § 404.1520(a), (b); SSR 82–62 (1982). The claimant bears the burden of establishing her inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy.  To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that she is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981)*; see generally Bowen*, 482 U.S. at 146, n.5 (regarding burdens of proof).

2.      The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly tailored to determine whether the findings of the Commissioner are

supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id.*, *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls v. Barnhart*, 296 F.3d at 290 (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases de novo or resolve mere conflicts in the evidence." *Vitek v. Finch*, 428 F.2d 1157, 1157–58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings, and that his conclusion is rational. *See Vitek*, 428 F.2d at 1157–58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

C.  Analysis

Plaintiff alleges: (1) the ALJ failed to properly re-evaluate the opinions of treating physician Dr. Burger as instructed by the District Court and by the Appeals Council; (2) the ALJ failed to consider other medical evidence of record; and (3) the ALJ's decision is not supported by substantial evidence. Pl.'s Br. 1, ECF No. 13.

1.  Treating Physician Opinion

Citing to the 2016 Report and Recommendation of the magistrate judge, Plaintiff argues that the ALJ failed to properly re-evaluate the opinions of Dr. Burger because the ALJ indicated that the record does not corroborate Plaintiff's testimony regarding physical therapy when in fact the record

supports Plaintiff's testimony. Pl.'s Br. 15-17. Plaintiff argues that this failure by the ALJ supports the allegation that his findings regarding Dr. Burger's opinions are not supported by substantial evidence. *Id.* at 17. The undersigned disagrees.

As an initial matter, the referenced 2016 Report and Recommendation was written by the undersigned. In that recommendation, I pointed out that there were inconsistencies in ALJ Sweeda's November 2013 decision in his discussion of treatment that Plaintiff had received. Tr. 371. One of the unexplained inconsistencies was a statement by the ALJ that Plaintiff never underwent physical therapy for her back problems, while acknowledging Plaintiff's testimony that she had been treated with physical therapy. *Id.* This really had nothing to do with Dr. Burger's opinion or the ALJ's consideration of his opinion; however, this issue seems to still engender inconsistent remarks from the ALJ.

At the second hearing before ALJ Sweeda in 2017, additional medical records were admitted into evidence which included references to Plaintiff's pre-onset-date treatment. Tr. 305. In his May 2017 decision, ALJ Sweeda still maintained that Plaintiff "never underwent any physical therapy for her back condition" although he acknowledged that Plaintiff reported to a consultative examiner that ten years earlier she had been treated with physical therapy and injections by an orthopedic surgeon. Tr. 402.

On remand, ALJ Morriss was directed to take the necessary action to make sure the record is complete; give further consideration to the treating source opinion; give further consideration to whether Plaintiff has PRW, and if so, her ability to perform it; if warranted, obtain supplemental evidence from a VE; and ensure that all cited rules, regulations, and sources relied upon are correct, applicable, and currently in effect. Tr. 415-16. After conducting a third administrative hearing, ALJ Morriss issued his decision. He discussed Plaintiff's hearing testimony that physical therapy,

injections, and water therapy had not provided her relief, but noted that, as to the testimony regarding physical therapy, "the record does not corroborate that assertion." Tr. 291, n.2. Later, when recounting Plaintiff's 2012 consultative examination, the ALJ indicates that Plaintiff "reported being treated with physical therapy and injections by an orthopedic surgeon for her back condition." Tr. 292. Further in his decision, ALJ Morriss noted the district court's finding that the prior decision erred in stating Plaintiff had never undergone physical therapy for her back condition and he again notes that "the record does not reflect that claimant received physical therapy." Tr. 293, n.3. Plaintiff points to a document from NovaCare Rehabilitation to support her assertion regarding physical therapy. Pl.'s Br. 18. This one-page document is included in the Exhibit containing records from Dr. Lashbrook.[7] *See* Ex. 15F at Tr. 699-710. The NovaCare Progress Update indicates that Plaintiff was evaluated on October 3, 2006 and was seen for a total of 12 visits. Tr. 706. The record indicates Plaintiff's treatments included aqua therapy, patient education, and functional activities, and recommended another six weeks of treatment. *Id.* While the Commissioner argues that this record supports water therapy—which the ALJ does not seem to dispute—and does not address physical therapy specifically, the undersigned is more inclined to side with Plaintiff in finding that this record encompasses the more broad definition of physical therapy. However, as noted by the Commissioner, "[t]he specific type of therapy treatment that Plaintiff received in 2006 did not impact the ALJ's fact-finding about the extent of Plaintiff's functional limitations *after June 1, 2009* (Tr. 291-93). Irrespective of her treatment in 2006, the ALJ noted that Plaintiff was able to work through June 2009, and rightly focused on the evidence from June 2009 onward." Def.'s Br. 12 (emphasis in original). Accordingly, the undersigned finds that, not only has this "dead horse" been beaten enough,

---

[7] Although ALJ Morriss cites to Exhibit 15F when referencing Plaintiff's 2006 MRI, he does not acknowledge the NovaCare document.

but any error by the ALJ in his discussion of Plaintiff's pre-onset-of-disability physical therapy is harmless as the ALJ would have reached the same decision even if he acknowledged Plaintiff's physical therapy treatment. *See Mickles v. Shalala,* 29 F.3d 918, 921 (4th Cir. 1994) (finding ALJ's error harmless when the ALJ "would have reached the same result notwithstanding his initial error").

As to the opinion of Dr. Burger, in my 2016 Report and Recommendation I took issue with the ALJ Sweeda's decision that referenced a lack of objective support for Dr. Burger's opinion and the ALJ's failure to address how Dr. Burger's opinion conflicted with the opinions of the State agency physicians. Tr. 372. The more germane question now before the court is whether ALJ Morriss provided adequate reasons for failing to give Dr. Burger's opinion controlling weight. As explained below, the undersigned finds that he did.

a. Opinion of Treating Physician Dr. J. Henk Burger

On October 14, 2013, Dr. Burger provided his opinion regarding Plaintiff's ability to work by answering four questions submitted to him by Plaintiff's attorney. Tr. 261-62.

Dr. Burger checked "no" to the following question:

In view of the back and leg pain that [Plaintiff] was experiencing when she was last examined in your office, do you feel that she is capable of performing work which would require prolonged standing, i.e. 2 or more hours at a time and up to 6 hours in an 8 hour period?

Dr. Burger checked "yes" to the following three questions:

If [Plaintiff] attempted to work, would you recommend that she limit herself to a sedentary job?

In view of the pain and discomfort that [Plaintiff] is currently experiencing, do you feel that she would need to rest and/or take breaks on an unpredictable and unscheduled basis in order to complete a normal 8 hour workday?

According to your medical records, [Plaintiff] reported worsening back pain that radiated into her legs when seen in your office on January 7, 2013, and both straight leg raise and bowstring testing were positive bilaterally upon examination. In your

opinion, are [Plaintiff's] functional limitations as outlined above reasonably consistent [with] the medical findings from her clinical examinations?

Tr. 261.

b. ALJ Morriss's Consideration of Dr. Burger's Opinion

In discussing Plaintiff's degenerative disc disease, the ALJ noted that Plaintiff "was seen infrequently by her primary care physician and only complained of back pain on two occasions. While she complained of back pain to her primary care physician, physical examinations at that time were generally unremarkable, as was the examination performed by the consultative examiner." Tr. 292. The ALJ then went on to describe Dr. Burger's opinions in the October 2013 questionnaire. Tr. 293. The ALJ noted that he was directed by the Appeals Council "to evaluate, adequately, Dr. Burger's treating source opinion and to address inconsistencies in the May 25, 2017 decision." *Id.* After addressing the physical therapy inconsistency, ALJ Morriss discussed Dr. Burger's treatment history of Plaintiff. *Id.* ALJ Morriss noted:

> On examination by Dr. Burger in January 2013, the claimant did have positive straight leg raising and bowstring test on the left and right. In September 2013, the claimant complained of back pain radiating down both legs. (Exhibit 12F). Examination revealed mild to moderate distress tenderness in the low back with positive straight leg and bowstring test again noted. However, as in January 2013, the claimant had normal strength, bulk, and tone in the muscles of the extremities with normal sensation and reflexes.

*Id.* The ALJ noted Plaintiff's testimony that, due to lack of finances, she was unable to follow through with Dr. Burger's recommendation that she contact a spine specialist. He also noted Plaintiff's testimony that she "primarily saw Dr. Burger for medication checkups only." *Id.* ALJ Morriss concluded that "Dr. Burger's opinion is not supported by and is not consistent with the medical evidence of the record as a whole." *Id.* He also noted as an additional factor in his consideration of the opinion that Dr. Burger is not an orthopedist or neurologist but is a family medicine specialist. *Id.*

c. Discussion

SSR 96-2p provides that if a treating source's medical opinion is "well-supported and 'not inconsistent' with the other substantial evidence in the case record, it must be given controlling weight[.]" *See also* 20 C.F.R. § 404.1527(c)(2)[8] (providing treating source's opinion will be given controlling weight if well-supported by medically-acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record); *see also Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996) (finding a physician's opinion should be accorded "significantly less weight" if it is not supported by the clinical evidence or if it is inconsistent with other substantial evidence). As recently explained by the Fourth Circuit Court of Appeals, Section 404.1527(c)(2) sets out two rules an ALJ must follow when evaluating a medical opinion from a treating physician. First, it establishes the "treating physician rule," under which the medical opinion of a treating physician is entitled to "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2); *see also*, *e.g.*, *Arakas v. Comm'r of SSA*, 983 F.3d 83, 106–07 (4th Cir. 2020) (citing Section 404.1527(c)(2) and applying the treating physician rule); *Brown v. Comm'r of SSA*, 873 F.3d 251, 255–56 (4th Cir. 2017) (same). Second, if a medical opinion is not entitled to controlling weight under the treating physician rule, an ALJ must consider each of the following factors to determine the weight the opinion should be afforded: (1) the "[l]ength of the treatment relationship and the frequency of examination"; (2) the "[n]ature and extent of the treatment relationship"; (3) "[s]upportability," i.e., the extent to which the treating physician "presents relevant evidence to support [the] medical opinion"; (4) "[c]onsistency," i.e., the extent to which the opinion is consistent with the evidence in the record; (5) the extent to

---

[8] Section 404.1527 cited and discussed herein applies to claims, like Plaintiff's, filed before March 27, 2017. Plaintiff's claim under review was filed in 2012.

which the treating physician is a specialist opining as to "issues related to his or her area of specialty"; and (6) any other factors raised by the parties "which tend to support or contradict the medical opinion." 20 C.F.R. § 404.1527(c)(2)(i)–(6). *Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377, 385 (4th Cir. 2021). In *Dowling* the Court of Appeals noted that, although "an ALJ is not required to set forth a detailed factor-by-factor analysis in order to discount a medical opinion from a treating physician, it must nonetheless be apparent from the ALJ's decision that he meaningfully considered *each* of the factors before deciding how much weight to give the opinion." *Id.* (emphasis in original). The rationale for the general rule affording opinions of treating physicians greater weight is "because the treating physician has necessarily examined the applicant and has a treatment relationship with the applicant." *Johnson v. Barnhart*, 434 F.3d at 654 (quoting *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001)). The ALJ has the discretion to give less weight to the opinion of a treating physician when there is "persuasive contrary evidence." *Mastro*, 270 F.3d at 176. SSR 96-2p requires that an unfavorable decision contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight. In undertaking review of the ALJ's treatment of a claimant's treating sources, the court focuses its review on whether the ALJ's opinion is supported by substantial evidence.

"When, as here, an ALJ denies a claimant's application, the ALJ must state 'specific reasons for the weight given to the treating source's medical opinion,' to enable reviewing bodies to identify clearly the reasons for the ALJ's decision." *Sharp v. Colvin*, 660 F. App'x 251, 257 (4th Cir. 2016). In *Sharp*, the Fourth Circuit determined that the "ALJ did not summarily conclude that [the doctor's] opinion merited little weight" because the ALJ explained why he discredited the opinion, remarking

that the claimant's limitations were not supported by the doctor's office notes. *Id.* Here, the ALJ's decision contained specific reasons for the weight given to Dr. Burger's opinion—noting inconsistencies in his examination findings. Tr. 293. Additionally, the undersigned notes that Dr. Burger's opinion consisted of check-marked responses in a questionnaire. Tr. 261. The regulations provide that "[t]he better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion." 20 C.F.R. § 404.1527(c)(3); *Bishop v. Astrue*, No. CA 1:10-2714-TMC, 2012 WL 951775, at *3 n.5 (D.S.C. Mar. 20, 2012) (noting that "[f]orm reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best.").

An ALJ's determination as to the weight to be assigned to a medical opinion generally will not be disturbed absent some indication that the ALJ has dredged up "specious inconsistencies," *Scivally v. Sullivan*, 966 F.2d 1070, 1077 (7th Cir. 1992), or has failed to give a sufficient reason for the weight afforded a particular opinion, *see* 20 C.F.R. § 404.1527(c). Having considered the ALJ's decision in view of the regulatory directives and the directives of the Appeals Council, the court finds that the ALJ's findings are supported by substantial evidence. The ALJ noted that he "considered opinion evidence in accordance with the requirements of 20 CFR 404.1527." Tr. 290. Furthermore, the ALJ considered all of the pertinent factors in 20 C.F.R. § 404.1527(c)—examining relationship; treatment relationship, including length of treatment relationship, frequency of examination, and nature and extent of treatment relationship; supportability; consistency with the record as a whole; and specialization of the medical source. He noted that Dr. Burger was Plaintiff's primary care physician and that he examined Plaintiff ten times from her alleged onset date to her date last insured. Tr. 293. He discussed evidence that supported the 2013 opinion, but he also noted inconsistencies in the examinations performed by Dr. Burger. *Id.* He noted Plaintiff's testimony that she saw Dr. Burger primarily for "medication checkups only." *Id.* Finally, he identified Dr. Burger as a family medicine

specialist as opposed to an orthopedist or neurologist who would be better able to assess spinal issues. The court finds that the ALJ properly considered Dr. Burger's opinion in accordance with the applicable factors and legal authority. *See* 20 C.F.R. § 404.1527(c); *Craig v. Chater*, 76 F.3d at 589 (stating that the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]" ); *Hays v. Sullivan*, 907 F.2d at 1456 (holding that it is the ALJ's responsibility, not the court's, to determine the weight of evidence and resolve conflicts of evidence). Accordingly, the court finds that ALJ Morriss provided adequate reasons for not giving Dr. Burger's opinion controlling weight.

### 2. ALJ's Consideration of Additional Medical Evidence

Plaintiff argues that the ALJ failed to acknowledge her physical therapy at NovaCare Rehabilitation, and failed to consider and address the medical evidence of record from Tristate Neurological Surgeons, Meadville Medical Center, and Dr. Rebecca Lashbrook—including an MRI of Plaintiff's lumbar spine. Pl.'s Br. 18. Plaintiff argues that this means the ALJ did not consider the evidence in making his RFC assessment or in his disability determination. *Id.* The Commissioner contends that "the ALJ did not ignore any clearly relevant and probative medical evidence. The medical evidence that Plaintiff alleges was ignored was from *2006*—three years before the relevant period—and only showed that Plaintiff had lower back pain linked to mild degenerative changes in her lumbar spine (Pl.'s Br. 15-20) (citing Tr. 680-82, 684-98, 700-10)." Def.'s Br. 15 (emphasis in original).

Plaintiff's medical records reflect that prior to her alleged onset date of June 1, 2009, she received treatment for back pain while residing in Pennsylvania. Plaintiff contends the ALJ failed to consider and address these records. The court notes that in her written exceptions to Judge Morriss's decision, other than the records related to physical therapy, the only record that Plaintiff takes issue

with the ALJ failing to consider is the September 2006 MRI. Tr. 276. However, it appears that she now takes issue with the ALJ's failure to address other records pre-dating her onset date found at Exhibits 13F through 15F. Pl.'s Br. 18.

At the third administrative hearing, ALJ Morriss admitted into evidence Exhibits 1 through 16F, Tr. 321, and those same exhibits were listed in the attachment to his decision, Tr. 300-01. The hearing transcript reflects discussions regarding the records now at issue including Plaintiff's treatment with Dr. Lashbrook, her referrals to other doctors, and tests including an MRI. Tr. 326-27, 331-32, 334. Furthermore, the ALJ explicitly cited to Plaintiff 2006 MRI in his decision, noting that despite the showing of spinal stenosis, the evidence did not indicate that she met the requirements of a listing. Tr. 290. The ALJ further noted that Plaintiff "alleges having spinal stenosis in 2006 but she worked in 2006 through 2009 and earned substantial gainful activity level income in 2006 and 2008." Tr. 292.

"Although required to develop the record fully and fairly, an ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered." *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000). "'[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision.'" *Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014) (quoting *Dyer v. Barnhart,* 395 F.3d 1206, 1211 (11th Cir. 2005)). Here, the ALJ stated that he considered the entire record, "and, absent evidence to the contrary, we take [him] at [his] word." *Id.*

> When considering the adequacy of the record, the undersigned must look for evidentiary gaps that resulted in "unfairness or clear prejudice" to Claimant. *Brown v. Shalala,* 44 F.3d 931, 935 (11th Cir. 1995). A remand or reversal is not warranted every time a claimant alleges that the ALJ failed to fully develop the record. Instead, the decision of the ALJ will not be overturned "unless the claimant shows that he or she was prejudiced by the ALJ's failure. To establish prejudice, a claimant must demonstrate that he or she could and would have adduced evidence that might have altered the result." *See Carey v. Apfel,* 230 F.3d 131, 142 (5th Cir. 2000).

*Ferrell v. Astrue*, No. 3:11-CV-00503, 2012 WL 4378131, at *10–11 (S.D.W. Va. June 22, 2012), *report and recommendation adopted,* No. 3:11-CV-00503, 2012 WL 4378126 (S.D.W. Va. Sept. 25, 2012).

Plaintiff does not argue that the ALJ's failure to cite certain records in his decision resulted in prejudice. Nor does Plaintiff assert that her impairment rendered her disabled during the period covered by the records as the record reflects that she continued to work during that period. *See Orrick v. Sullivan,* 966 F.2d 368, 370 (8th Cir.1992) (absent showing of significant worsening of condition, ability to work with impairment detracts from finding of disability). Plaintiff cites to case law stating that the ALJ must not ignore evidence inconsistent with his opinion, or evidence that is important and material to the decision. However, Plaintiff has not demonstrated how records pre-dating her alleged onset of disability would change the outcome of the ALJ's decision. Only "[w]here the ALJ fails in his duty to fully inquire into the issues necessary for adequate development of the record, and such failure is prejudicial to the claimant" should be the case be remanded. *Marsh v. Harris*, 632 F.2d 296, 300 (4th Cir. 1980). Upon review of the ALJ's decision and the entire administrative record, the court finds that the ALJ's decision is supported by substantial evidence. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (explaining that, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high," as it means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion").

III.     Conclusion

The court's function is not to substitute its own judgment for that of the ALJ, but to determine whether the ALJ's decision is supported as a matter of fact and law. Based on the foregoing, the undersigned finds that the Commissioner performed an adequate review of the whole record and that the decision is supported by substantial evidence.

Accordingly, pursuant to the power of the court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in Social Security actions under Section 1631(c)(3) of the Act, 42 U.S.C. Sections 405(g) and 1383(c)(3), the Commissioner's decision is affirmed.

IT IS SO ORDERED.

February 22, 2021
Florence, South Carolina

Kaymani D. West
United States Magistrate Judge